UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Government Employees Insurance Company,

          Plaintiff,

v.

Christina Marie Knutson; Melissa Amandalee Mayo; Dana Mayo; Jason Tomporowski, as trustee for the next-of-kin of Michelle Lee Young, deceased; James Young, Sr.; Cheryl Young; and Sarah Young, as trustee for the next-of-kin of James Leon Young, Jr., deceased;

          Defendants.

Civil No. 20-503 (DWF/LIB)

**MEMORANDUM OPINION AND ORDER**

---

Lauren E. Nuffort and Michelle K. Kuhl, Lommen Abdo, P.A., counsel for Plaintiff Government Employees Insurance Company;

Paul J. Rocheford, Arthur, Chapman, Kettering, Smetak & Pikala, PA, counsel for Defendant Christina Marie Knutson;

Peter W. Riley and Matthew J. Barber, Schwebel Goetz & Sieben, P.A., counsel for Defendants Melissa Amandalee Mayo; Jason Tomporowski, as trustee for the next-of-kin of Michelle Lee Young; and Sarah Young, as trustee for the next-of-kin of James Leon Young, Jr.;

Dennis S. Berry, Berry Law Offices, counsel for Defendant Dana Mayo; and

Nathaniel A. Dahl and Derek I. Stewart, Meshbesher & Spence, Ltd., counsel for Defendants James Young, Sr., and Cheryl Young.

## INTRODUCTION

This is a declaratory judgment action brought under 28 U.S.C. §§ 2201, 2202. Defendant Christina Marie Knutson was involved in a fatal motor vehicle accident with a group of motorcycles. The injured survivors and the decedents' estates commenced lawsuits against Christina Knutson for damages arising from that accident. Plaintiff Government Employees Insurance Company ("GEICO") seeks a declaration that it does not have a duty to defend or indemnify Christina Knutson in those lawsuits. The parties have stipulated to the relevant facts and filed cross-motions for summary judgment. As stated at the hearing, all parties agree that a decision on the legal question at issue in these motions fully resolves this matter. (*See also* Doc. No. 55.) For the reasons discussed below, the Court grants GEICO's motion.

## BACKGROUND

On July 7, 2018, Christina Knutson was operating a 2005 Chevrolet Monte Carlo and was involved in a motor vehicle accident at the intersection of Minnesota State Highway 23 and Kandiyohi County Road 2 in Kandiyohi County, Minnesota. (Rule 26(f) Report ¶ a(4)(5), Doc. No. 24.)[1] The 2005 Chevrolet Monte Carlo was owned by Christina Knutson's father, Neil Knutson, of Karlstad, Minnesota. (*Id.*

---

[1] The parties have stipulated to the relevant facts via their Rule 26(f) Report. The facts contained therein are affirmed by the parties' pleadings. (*E.g.*, Compl. ¶¶ 2, 20, Doc. No. 1; Knutson Ans. ¶¶ 2, 7, Doc. No. 12; James and Cheryl Young Ans. §§ III, XIII, Doc. No. 19; Melissa Mayo and Trustees' Ans. ¶¶ 2, 4, Doc. No. 20; Dana Mayo Ans. ¶ 2, Doc. No. 25.) For simplicity, the Court cites only to the Rule 26(f) Report where possible.

¶ a(4)(6).)  Neil Knutson furnished the 2005 Chevrolet Monte Carlo to Christina Knutson for her regular use.  (*Id.* ¶ a(4)(7).)  The 2005 Chevrolet Monte Carlo was insured by Neil Knutson under an automobile insurance policy issued by Progressive Direct Insurance Company.  (*Id.* ¶ a(4)(5); Aff. of Mathew J. Barber Ex. 1, Doc. No. 37.)  Christina Knutson is not listed as a driver or resident relative on Neil Knutson's Progressive policy.  (Barber Aff. Ex. 1 at 1.)

Christina Knutson lived with her mother, Amy Knutson, in Bricelyn, Minnesota.  (Rule 26(f) Report ¶¶ a(4)(1), a(4)(3)–(4).)  GEICO issued an automobile insurance policy to Amy Knutson for a 2016 Nissan Rogue.  (Rule 26(f) Report ¶¶ a(4)(1)–(2); *see generally* GEICO Policy.)[2]  Christina Knutson is not listed on Amy Knutson's GEICO policy as a named insured or an additional driver.  (GEICO Policy at 2.)  Amy Knutson and Neil Knutson are divorced and do not reside in the same household.  (Rule 26(f) Report ¶ a(4)(8).)

GEICO's insurance policy for Amy Knutson's 2016 Nissan Rogue covers "damages . . . which an **insured** becomes legally obligated to pay . . . arising out of the ownership, maintenance or use of the **owned auto**, a **non-owned auto** or a **rental vehicle**."  (GEICO Policy at 24 (emphasis in original).)  An "owned auto" is defined by the policy as:

---

[2]   For purposes of clarity, the Court henceforth cites to the Bates numbering on this document given the two separate paginations, Bates numbering, and ECF pagination from two different filings.  Thus, for example, Bates pagination GEICO002, found at ECF No. 1-1 at 2 and ECF No. 43-1 at 4, is cited as:  GEICO Policy at 2.

3

>(a) a vehicle described in this policy for which a premium charge is shown for these Coverages;
>(b) a **trailer** owned by **you**;
>(c) **a private passenger**, **farm** or **utility auto**, ownership of which **you** acquire during the policy period or for which **you** enter into a lease during the policy period for a term of six months or more, if (i) it replaces an **owned auto** as denied in (a) above; or (ii) we insure all **private passenger**, **farm** and **utility autos** owned or leased by **you** on the date of the acquisition, and **you** ask us to add it to the policy no more than 30 days later;
>(d) a **temporary substitute auto**.

(GEICO Policy at 6 (emphasis in original).) A "non-owned auto" is "an automobile or **trailer** not owned by or furnished for the regular use of either **you** or a **relative**, other than a **temporary substitute auto** or **rental vehicle**. An auto rented or leased for more than 30 days will be considered as furnished for regular use." (GEICO Policy at 6 (emphasis in original).) A "rental vehicle" is a vehicle "loaned to **you** or a **relative** as a replacement for an **owned auto** being serviced or repaired" for less than one month. (GEICO Policy at 6 (emphasis in original).)

Because Christina Knutson was provided the 2005 Chevrolet Monte Carlo for regular use by Neil Knutson, GEICO asserts it does not constitute an owned auto, non-owned auto, or rental vehicle under its policy, meaning GEICO has no contractual obligation to provide coverage to Christina Knutson under Amy Knutson's policy for the 2016 Nissan Rogue. Defendants assert this exclusion of liability coverage runs afoul of Minnesota law and that, as a result, GEICO is obligated to cover Christina Knutson's use of the 2005 Chevrolet Monte Carlo as a resident-relative of Amy Knutson.

## DISCUSSION

### A.  Legal Standard

The Declaratory Judgment Act provides, "In a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration."  28 U.S.C. § 2201(a).  The parties seek a declaration of rights under GEICO's automobile insurance policy.

This lawsuit asks the Court to interpret provisions belonging to the Minnesota No-Fault Automobile Insurance Act ("No-Fault Act"), Minn. Stat. §§ 65B.41-65B.71.  "Interpretation of an insurance policy is a matter of state law."  *Allstate Indemnity Co. v. Rice*, 755 F.3d 621, 623 (8th Cir. 2014) (cleaned up).  "In interpreting state law, we are bound by the decisions of the state's highest court."  *Minn. Supply Co. v. Raymond Corp.*, 472 F.3d 524, 534 (8th Cir. 2006) (internal quotation omitted).  "When a state's highest court has not decided an issue, it is up to this court to predict how the state's highest court would resolve that issue."  *Id.*  "Decisions of intermediate state appellate courts are persuasive authority that we follow when they are the best evidence of what state law is."  *Id.*

### B.  Minnesota's No-Fault Act

Minnesota's "well-settled general rule in the construction of insurance contracts" permits parties "to contract as they desire, and so long as coverage required by law is not omitted and policy provisions do not contravene applicable statutes, the extent of the insurer's liability is governed by the contract entered into."  *Am. Family Mut. Ins. Co. v.*

*Ryan*, 330 N.W.2d 113, 115 (Minn. 1983).  Minnesota's "jurisprudence concerning the No-Fault Act . . . is extensive and well developed."  *Pepper v. State Farm Mut. Auto. Ins. Co.*, 813 N.W.2d 921, 925 (Minn. 2012).  Minnesota courts "determine whether an exclusion in an insurance contract violates the No-Fault Act . . . by first considering whether the terms of the exclusion are unambiguous."  *Id.* at 927 (citing *Latterell v. Progressive N. Ins. Co.*, 801 N.W.2d 917, 920 (Minn. 2011)).  "If the terms of the exclusion are unambiguous, [courts] then consider whether the exclusion omits coverage required by the No-Fault Act or contravenes the No-Fault Act."  *Pepper*, 813 N.W.2d at 927 (citing *Latterell*, 801 N.W.2d at 921, and *Lobeck v. State Farm Mut. Auto. Ins. Co.*, 582 N.W.2d 246, 249 (Minn. 1998)).

Here, the terms of the exclusion are unambiguous.  GEICO insures damages "arising out of the ownership, maintenance or use" of an owned auto, a non-owned auto, or a rental vehicle.  (GEICO Policy at 24.)  By operation of the definitions of owned auto, non-owned auto, and rental vehicle, GEICO excludes coverage for vehicles furnished for an insured's regular use not listed under the policy.  Put more simply, because the 2005 Chevrolet Monte Carlo was not specifically listed in the GEICO policy, was not a rental vehicle to replace a specifically listed vehicle in the GEICO policy, and was not otherwise used in a temporary fashion, it is excluded from coverage.  The parties do not dispute that GEICO's policy excludes resident-relatives like Christina Knutson from coverage if the vehicle they are driving is furnished for their regular use.  The Court moves next to the question of whether this regular-use exclusion omits coverage required by the No-Fault Act or contravenes the No-Fault Act.

6

The parties focus on the application of Minn. Stat. § 65B.49, subd. 3(2), which reads:

> Under residual liability insurance the reparation obligor shall be liable to pay, on behalf of the insured, sums which the insured is legally obligated to pay as damages because of bodily injury and property damage arising out of the ownership, maintenance or use of *any motor vehicle, including a motor vehicle permissively operated by an insured* as that term is defined in section 65B.43, subdivision 5, . . . .

(emphasis added).[3]  An "insured" is defined as the policyholder and also includes relatives of the named insured "residing in the same household with the named insured" who are "not identified by name in any other [insurance policy] as an insured." Minn. Stat. § 65B.43, subd. 5.  Christina Knutson constitutes an "insured" as defined by Minn. Stat. § 65B.43, subd. 5, for purposes of § 65B.49, subd. 3(2), because she is not identified by name in Amy Knutson's GEICO policy, Neil Knutson's Progressive policy, or any other automobile insurance policy, and she resides in the same household as Amy Knutson, the named insured.

"The No-Fault Act attempts 'to relieve the severe economic distress of uncompensated victims of automobile accidents' by requiring that every insurance policy issued in Minnesota provide certain first- and third-party coverage." *Pepper*, 813 N.W.2d at 925-26 (quoting Minn. Stat. §§ 65B.42, § 65B.49, subd. 3a).  The "'No-Fault

---

[3]   Defendants repeatedly refer to Minn. Stat. § 65B.49, subd. 3(2), as the "Any Use Statute," but the Court found no state or federal decisions, state laws, or secondary sources referring to Minn. Stat. § 65B.49, subd. 3(2), as such.  Rather, the statute itself falls under the umbrella of the Minnesota No-Fault Automobile Insurance Act.  Minn. Stat. § 65B.41 ("Sections 65B.41 to 65B.71 may be cited as the 'Minnesota No-Fault Automobile Insurance Act.'").

7

Act is primarily aimed at providing first-party benefits to the insured, thereby eliminating the need to prove liability before an injured party can recover medical or other expenses.'" *Latterell*, 801 N.W.2d at 922 (quoting *Lobeck*, 582 N.W.2d at 249). The Minnesota Supreme Court explained first- and third-party coverage as follows:

> We have said that "[f]irst-party coverage pays benefits to the insured, often regardless of the vehicle the insured was occupying at the time of a motor vehicle accident." *Latterell*, 801 N.W.2d at 922. In that sense, first-party coverage generally "'follow[s] the insured person.'" *Id.* (quoting *Lobeck*, 582 N.W.2d at 250). [Underinsured motorist ("UIM")] coverage is an example of first-party coverage required by the No-Fault Act. *See id.* at 922-23 (acknowledging that UIM coverage has characteristics of both first-and third-party benefits, but that courts "treat[ ] UIM coverage as first-party coverage for purposes of the No-Fault Act"). But "unlike some other types of first-party coverage," primary UIM coverage "follows the vehicle rather than the insured on the policy." *Id.* at 923. In contrast, "third-party coverage pays benefits to individuals other than the named insured." *Id.* at 922. In that sense, "[t]hird-party coverage follows the vehicle." *Id.* Liability coverage is an example of third-party coverage. *Id.*

*Pepper*, 813 N.W.2d at 926. Because of this "crucial" distinction between first- and third-party coverage, "validity of an exclusionary provision in an insurance policy may depend on whether the exclusion applies to first- or third-party coverage." *Latterell*, 801 N.W.2d at 922. This means that Minnesota courts are "more likely to invalidate exclusions to first-party coverage than to third-party coverage." *Id.* (citing *Lobeck*, 582 N.W.2d at 250).

This is a third-party coverage case. Defendants, save for Christina Knutson, seek coverage from GEICO for their injuries and damages caused by Christina Knutson. As the Minnesota Supreme Court summarized in *Pepper* in 2012, such third-party coverage follows the vehicle. This means that coverage for the injuries and damages here follows

8

the 2005 Chevrolet Monte Carlo, not Christina Knutson.  Defendants ask this Court to disturb that understanding of Minnesota law, arguing that a 2002 amendment to the No-Fault Act upended the state of third-party liability coverage.

To understand this argument, the Court must look at the backdrop of the 2002 amendment.  In 2001, the Minnesota Supreme Court decided *Progressive Spec. Ins. Co. v. Widness*, 635 N.W.2d 516 (Minn. 2001).  *Widness* required the Minnesota Supreme Court

> to decide whether the Minnesota No-Fault Automobile Insurance Act requires that an insurer provide residual liability coverage to the child of a named insured when the child is not a named insured and is driving a vehicle not owned by anyone in the named insured's household, with permission of the vehicle owner.

*Id.* at 517.  Sixteen-year-old Adonna Enyart drove Melissa Baardsen's vehicle with Baardsen's permission.  *Id.*  The vehicle was not furnished to Enyart for regular use.  *Id.* at 523.  Enyart and her three passengers, including Kelly Widness, were involved in a one-vehicle rollover accident.  *Id.* at 517.  Baardsen did not insure the vehicle, so Widness sought damages for personal injuries resulting from the accident from Progressive Specialty Insurance Company, who insured Enyart's mother.  *Id.*  Enyart's mother did not list Enyart as a named insured or an additional driver on her Progressive policy.  *Id.*  Progressive denied residual liability coverage for claims arising out of the accident.  *Id.* at 517-18.  Progressive acknowledged that Enyart would have received coverage had she been driving the vehicle for which the policy was written, but the policy excluded coverage for "nonowned vehicles driven by nonspouse family members."  *Id.* at 519.

Widness argued that the language of "a motor vehicle" means "*any* motor vehicle (being driven with the owner's permission)." *Id.* at 520 (emphasis in original). The Minnesota Supreme Court rejected this argument, concluding that when reading the No-Fault Act as a whole the "mandatory aspect of residual liability insurance is coverage for the insured vehicle, so that if the insured vehicle is the at-fault vehicle in an accident, there will be liability coverage." *Id.* at 521. This is a continuation of Minnesota's application of residual liability coverage to the "vehicle rather than the driver," in accordance with other aspects of the No-Fault Act as well as the historical development of third-party liability concepts in Minnesota. *Id.* at 520–22. The Minnesota Supreme Court reiterated its precedent, stating: "liability coverage differs from first-party coverage under the No-Fault Act and is coverage that follows the vehicle rather than the person." *Id.* at 522. It ended by noting: "had the legislature meant that single phrase to be as encompassing as respondent urges us to read it, the legislature could easily have said 'any motor vehicle' rather than 'a motor vehicle.'" *Id.*

Minnesota then amended Minn. Stat. § 65B.49, subd. 3(2), in March 2002 as follows:

> Under residual liability insurance the reparation obligor shall be liable to pay, on behalf of the insured, sums which the insured is legally obligated to pay as damages because of bodily injury and property damage arising out of the ownership, maintenance or use of ~~a~~ <u>any</u> motor vehicle, <u>including a motor vehicle permissively operated by an insured as that term is defined in section 65B.43, subdivision</u> 5, if the injury or damage occurs within this state, the United States of America, its territories or possessions, or Canada. A reparation obligor shall also be liable to pay sums which another reparation obligor is entitled to recover under the indemnity provisions of section 65B.53, subdivision 1.

10

2002 Minn. Laws ch. 234, at 217–18 (H.F.No. 2783).

From this rapid adoption, it appears that Minnesota's Legislature accepted the *Widness* court's invitation to make the "phrase to be as encompassing as respondent urges us to read it" by amending the statute to read "'any motor vehicle' rather than 'a motor vehicle.'" 635 N.W.2d at 522. But the Minnesota Supreme Court in 2012, ten years after the 2002 amendment, continued to explain that third-party insurance coverage under the No-Fault Act follows the vehicle, not the insured. *Pepper*, 813 N.W.2d at 926. Moreover, the Minnesota Court of Appeals referenced the very subsection at issue here and reiterated that residual-liability coverage provisions in the "No-Fault Act refer to coverage in terms of the vehicle rather than the individual." *Am. Family Mut. Ins. Co. v. Bauer*, 2008 WL 763225, at *2 (Minn. Ct. App. Mar. 25, 2008) (citing Minn. Stat. § 65B.49, subd. 3(2)). It re-affirmed that "regular use" exclusions can be valid. *Id.* (citing *Toomey*, 306 N.W.2d at 550, and *Widness*, 635 N.W.2d at 522); *see also North Star Mut. Ins. Co. v. Kruger*, 2016 WL 1724292, at *2 (Minn. Ct. App. May 2, 2016) (considering whether the district court correctly determined a vehicle was available for regular use, thus subject to a regular-use exclusion).

Defendants attempt to sidestep *Bauer*, noting that "[u]npublished opinions of the court of appeals are not precedential." Minn. Stat. § 480A.08, subd. 3(c) (2018). But the Minnesota legislature amended[4] this statute to remove all language concerning how the

---

[4]    This amendment was signed into law on May 16, 2020, with an effective date of August 1, 2020, 2020 Minn. Laws ch. 82 (S.F.No. 3072), several months prior to Defendants' citation to the outdated version.

11

Minnesota Court of Appeals may publish decisions and the impact on their precedential value.  2020 Minn. Laws ch. 82, at 1–2 (S.F.No. 3072).  Now, the Minnesota Court of Appeals determines how to weigh whether a decision should be deemed precedential.  Minn. R. App. P. 136.01.  Nonprecedential opinions may be considered persuasive authority.  Minn. R. App. P. 136.01, subd. 1(c).  Whether under the old system or the new, this Court must determine how the Minnesota courts would decide this issue of Minnesota law, and the Minnesota Court of Appeals' *Bauer* opinion—the only Minnesota court decision directly discussing Minn. Stat. § 65B.49, subd. 3(2)—is persuasive as to what Minnesota law is as interpreted by its courts.  *Minn. Supply Co.*, 472 F.3d at 534.

The Eighth Circuit has likewise rejected analogous arguments seeking "omnibus liability coverage" under Minnesota's No-Fault Act.  *Great West Cas. Co. v. Decker*, 957 F.3d 910, 914 (8th Cir. 2020).  The Eighth Circuit noted that "the Minnesota Supreme Court has held that the No-Fault Act permits insurers to limit liability coverage for third parties, at least in certain circumstances."  *Id.* at 915 (citing *Lobeck*, 582 N.W.2d at 251).  Likewise, the "Minnesota Court of Appeals has held that insurance companies can, in some situations, limit their third-party liability coverage, even to the point of denying coverage to named insureds and their families."  *Id.* (citing *Ill. Farmers Ins. Co. v. Eull*, 594 N.W.2d 559, 560–62 (Minn. Ct. App. 1999)).

The *Widness* court explained how the result in *that case* would be different if "a" was changed to "any."  But the *Widness* court also explained the surrounding provisions of the No-Fault Act.  Section 65B.48, subd. 1 requires the "owner of a motor vehicle . . . [to] maintain . . . a plan of reparation security . . . insuring against loss

resulting from liability imposed . . . or injury . . . sustained by any person arising out of the ownership, maintenance, operation or use of the vehicle." And the very next sentence cross-references Minn. Stat. § 65B.49, subd. 3(2). This statute is unchanged from its discussion in *Widness*. *Compare* Minn. Stat. § 65B.48, subd. 1, *with Widness*, 635 N.W.2d at 519. Section 65B.49, subd. 3(1), requires that "[e]ach plan of reparation security shall also contain stated limits of liability, exclusive of interest and costs, with respect to each vehicle for which coverage is thereby granted . . . ." Again, this portion of the No-Fault Act remains unchanged. *Compare* Minn. Stat. § 65B.49, subd. 3(1), *with Widness*, 635 N.W.2d at 519. Absent systemic change to the No-Fault Act, this Court will not conclude that the 2002 amendment, adopted with limited debate and discussion, to have upended the established understanding of third-party residual liability insurance coverage, especially where the Minnesota courts have continued deciding cases with that same understanding in the intervening 18 years.

Granted, this Court is sympathetic to Defendants' arguments. Reading Minn. Stat. § 65B.49, subd. 3(2), in isolation appears to require an insurer to pay damages "arising out of the ownership, maintenance or use of any motor vehicle, including a motor vehicle permissively operated by an insured." But, again, this Court is obligated to apply the decisions of Minnesota's courts in interpreting Minnesota's law. *Minn. Supply Co.*, 472 F.3d at 534. While the 2002 amendment appears on its face to drastically upend the entirety of Minnesota's third-party liability insurance from the vehicle, the Minnesota courts have not changed their understanding of third-party liability. The Minnesota Supreme Court and the Minnesota Court of Appeals have repeatedly affirmed that

understanding of Minnesota's No-Fault Act, both before and after *Widness* and the 2002 amendment. Holding otherwise, as Defendants request, would mean this Court would have to overrule multiple Minnesota Supreme Court—*Widness*, *Lobeck*, and *Toomey*—and Minnesota Court of Appeals—*Bauer*—decisions, as well as District of Minnesota—*Great West Cas. Co. v. Decker*, 358 F.Supp.3d 835 (D. Minn. 2019)—and Eighth Circuit—*Decker*, 957 F.3d 910—decisions relying up on them. This dramatic change in interpretation of Minnesota's No-Fault Act cannot be squared with this Court's duty to interpret the statute as the Minnesota courts would.

Finally, the Court notes that the No-Fault Act is supposed to help "relieve the severe economic distress of uncompensated victims." Minn. Stat. § 65B.42(1). This is not a case of uncompensated victims, but rather undercompensated victims. Defendants sought and received coverage under the insurance policy covering the 2005 Chevrolet Monte Carlo. Defendants now seek funds from GECIO to cover, at least in part, their remaining damages. This was not a situation contemplated by the No-Fault Act or *Widness*, nor was it the scenario the Minnesota legislature attempted to remedy with the 2002 amendment.

This Court concludes that the operation of GEICO's exclusion does not contravene the Minnesota No-Fault Automobile Insurance Act nor omit coverage required by statute.

## C.     Certification

In their reply briefing, Defendants ask this Court to certify the issue to the Minnesota Supreme Court.  Assuming that such a request is appropriate in a reply brief, it is respectfully denied.

"Whether a federal court should certify a question to a state court is a matter of discretion."  *Johnson v. John Deere Co.*, 935 F.2d 151, 153 (8th Cir. 1991).  "[W]ithout a 'close' question of state law or the lack of state sources, a federal court should determine all the issues before it."  *Id.* at 153–54 (citing *Perkins v. Clark Equip. Co.*, 823 F.2d 207, 209 (8th Cir. 1987)).  Here, Minnesota has a long history of tying third-party liability coverage to the vehicle and first-party liability coverage to the person.  As noted above, the Minnesota Supreme Court and the Minnesota Court of Appeals have repeatedly affirmed that understanding of Minnesota's No-Fault Act, both before and after *Widness* and the 2002 amendment.  Holding otherwise, as Defendants request, would result in a dramatic departure from Minnesota law unsupported by Minnesota precedent.  The 2002 amendment's own author did not envision such an upending of the No-Fault Act, but instead described this as a technical change as a response to *Widness* to fill a gap to "cover folks like we always have, and basically have, for many, many years."  *Commerce, Jobs, and Economic Development (House) 02/06/2002*, Minnesota Legislative Reference Library, at File No. 2 of 2, minute mark 0:15–4:56, *available at* https://www.leg.state.mn.us/lrl/media/file?mtgid=821869.  Accordingly, this Court concludes certification is unnecessary.

## CONCLUSION

Based upon the record before the Court, and the Court being otherwise duly advised in the premises, **IT IS HEREBY ORDERED** that:

1. Counterclaimants' Motion for Summary Judgment (Doc. No. [34]) is respectfully **DENIED**; and

2. Government Employees Insurance Company's Motion for Summary Judgment (Doc. No. [40]) is **GRANTED** as follows:

    a) GEICO does not have a duty to defend or indemnify Christina Marie Knutson for damages she may become legally obligated to pay to third-persons, including her co-defendants named herein, for bodily injuries arising out of her use of the 2005 Chevrolet Monte Carlo in the July 7, 2018 motor vehicle accident in Kandiyohi County, Minnesota.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: November 6, 2020　　　　　　　s/Donovan W. Frank
　　　　　　　　　　　　　　　　　　DONOVAN W. FRANK
　　　　　　　　　　　　　　　　　　United States District Judge